IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO PEARSON,
    Plaintiff
    v.
SECRETARY BEARD, et al.,
    Defendants

Case No. 3:09-cv-54-KRG-KAP

Order, Report and Recommendation

Order and Recommendation

Plaintiff's motion for extension of time, docket no. 49, is denied. I recommend that defendants' motion to dismiss, docket no. 46, be granted.

Report

Plaintiff, serving a life sentence and currently incarcerated at S.C.I. Coal Township, is, as even he admits, litigious. docket no. 16, Amended Complaint ¶1. His cases in this court share common features: the naming of an excessive number of defendants who are in repetitive and conclusory terms alleged to have "conspired" to "retaliate against him" for exercising his First Amendment rights, the filing of numerous motions for repeated extensions of time, and the ignoring of court orders that do not grant him extensions of deadlines. This matter illustrates all of the above. On November 20, 2012, the day his response to defendants' motion to dismiss was due, plaintiff moved for a 90-day extension of time on the grounds that Hurricane Sandy (late October 2012) and his unspecified illnesses prevented him from filing a response sooner. Previously, after his granted of extensions of time expired, plaintiff filed a motion for another extension of

time to file objections to my Report and Recommendation recommending that most of the 46 defendants named in his amended complaint (filed after repeated requests for extension of time) be dismissed, and though I denied that motion, plaintiff nonetheless filed the objections a month later. docket no. 23, docket no. 24.

Defendants correctly note that the complaint against them is barred by the two year statute of limitations applicable to Section 1983 tort claims in Pennsylvania. The complaint can be deemed filed at the earliest on the date plaintiff signed it, February 28, 2009. The non-trivial incidents that plaintiff complains of took place before March 1, 2007: defendant Kot allegedly assaulted him on February 3, 2007, and defendants Fisher, Reams, and Mulligan fired him or had him fired from his job[1] in the kitchen on February 26, 2007, in retaliation for plaintiff's litigation, specifically a complaint captioned <u>Pearson v. Shawley</u>, filed in 2006 in the Court of Common Pleas of Somerset County.

---

1. I do not believe that anyone familiar with inmates or prison litigation could say with a straight face that being fired from a prison job constitutes adverse action against the inmate sufficient to deter an inmate "of ordinary firmness" from persisting in his litigation activities, the second element of a retaliation claim, see <u>Rauser v. Horn</u>, 241 F.3d 330, 334 (3d Cir.2001), and <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir.2003), but according to several unsigned *per curiam* opinions of the Court of Appeals, it does. That court should re-visit the jurisprudence *en banc* and either set a realistic threshold for adverse actions or, better yet, require a subjective deterrence of the inmate litigant. Since the theoretical justification for this body of law is to ensure inmate access to courts, it should not be construed, as it is currently construed, to incentivize litigation by the subset of litigious inmates who are uniquely not deterred by adverse action.

I need not discuss those claims further because, assuming <u>arguendo</u> they were adequate to state a colorable claim, they are time-barred.

The events alleged to have taken place within the limitations period do not amount to a colorable claim. Various defendants are conclusorily alleged to have, in the period after February 28, 2007, joined these defendants in "covering up" or "failing to correct" the actions of these defendants. Plaintiff has no personally enforceable legal right to have other persons punish or correct these moving defendants, even if they were aware of plaintiff's version of events, believed them to be true, and concluded that the moving defendants' actions were wrongful. Fellow workers or supervisory personnel may be liable for failure to prevent wrongful actions by government employees. But an official who is aware of a problem and does not move to remedy it, much less one who fails to punish the person responsible for the problem, is only liable if that official has a legal duty to do so. <u>See</u> <u>Sample v. Diecks</u>, 885 F.2d 1099, 1110 (3d Cir.1989). Plaintiff cannot bootstrap his way into a claim by the argument that their failure to remedy an alleged violaton of his rights constitutes a new violation of his rights.

As I previously wrote, docket no. 17, plaintiff makes numerous conclusory allegations that defendants violated his rights between 2007 and 2009. Most of the conclusory allegations are also

3

legally trivial (e.g., defendants hid grievance forms or failed to forward them[2], or moved inmates from block to block) or constitute actions that beyond any doubt defendants would have taken anyway regardless of an alleged retaliatory animus (e.g., defendants ordered cell searches, or moved inmates from block to block). The one identifiable non-trivial action within the limitations period, that on October 20, 2008, defendant Karl removed plaintiff from his job, again allegedly in retaliation for plaintiff's filing of Pearson v. Shawley in 2006, is legally insufficient because there are no facts that allow a plausible inference that it was caused by any protected activity of plaintiff's.

This case illustrates a fact of which I could take judicial notice: inmates filing lawsuits is a routine activity. Why they would excite retaliatory animus is not alleged and cannot be assumed. Further, inmate lawsuits are not uniformly dispersed among the prison population: a disproportionately large proportion of lawsuits is filed by a small coterie of long-term or life prisoners. Why anyone but the frequent filer could keep track of them or would care about them is inexplicable. For this court to assume without plausible allegations of fact that a corrections officer would have a retaliatory animus in response to the filing

---

2. Because an inmate has no legal right to a grievance system no claim can be stated for taking grievances out of plaintiff's mailbox, failing to process them, or incorrectly deciding them. Such actions would excuse exhaustion but defendants do not raise failure to exhaust as a defense.

4

of a complaint in 2006, that would cause his decision-making in 2008, would be to adopt an absurd rule of law[3].

Simply put, if a retaliatory animus can be legally derived from temporal proximity of an inmate's grievances or lawsuits to a decisionmaker's decision, then frivolous inmate litigation becomes the legal equivalent of a breeder reactor. Every rational inmate's first order of business upon arrival in prison would be to file a frivolous lawsuit: every unfavorable action thereafter, under plaintiff's implicitly proposed theory of law, would be *prima facie* retaliatory. That is not the law in non-inmate cases. See Cardenas v. Massey, 269 F.3d 251, 264 (3d Cir.2001) ("[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not unusually suggestive.") (quoting, ultimately, Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)). How much less sufficient than insufficient a temporal distance of two or more years is, one could only imagine.

Inmate cases often do not get the same careful attention from appellate judges, but the legal concepts are the same. Since Fed.R.Civ.P. 11 presents no meaningful check on abusive litigation

---

3. Thompson v. Pitkins, Case No. 3:12-cv-166-KRG-KAP (W.D.Pa.), appeal docketed at No. 12-4046 (3d Cir.), is illustrative of the problem. The inmate plaintiff in that matter alleged that the warden's retaliatory animus could be inferred simply from the fact that he embarked on an unrivaled spree of grievance filings that was followed by the warden not making a change to a no-transfer decision.

5

behavior by inmates and there is nothing in the realm of prison litigation that corresponds to the out of pocket and opportunity costs that act as checks to frivolous litigation in other areas of civil law, Congress recognized, in the Prison Litigation Reform Act (PLRA), see 28 U.S.C.§ 1915A, that judges ought to be more careful in scrutinizing the sufficiency of inmate complaints. Careful scrutiny of this one compels the conclusion that it should be dismissed for failure to state any colorable claim within the limitations period.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: December 10, 2012

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Antonio Pearson BL-0521
S.C.I. Coal Township
1 Kelley Drive
Coal Township, PA 17866-1021

6