IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO PEARSON,                        :
          Plaintiff                     :
          v.                            :Case No. 3:09-cv-54-KRG-KAP
SECRETARY BEARD, <u>et</u> <u>al.</u>,              :
          Defendants                    :

<u>Report and Recommendation</u>

<u>Recommendation</u>

I recommend that the remaining defendants' motion for summary judgment, ECF no. 97, be granted.

<u>Report</u>

Plaintiff, formerly an inmate at S.C.I. Somerset, filed a complaint in 2009 over events that plaintiff alleged happened during his stay at that prison. ECF no. 3. He named as defendants 39 employees of the Pennsylvania Department of Corrections. Plaintiff then filed several motions for extension of time to file an amended complaint, which were granted, and filed an amended complaint at ECF no. 16. The amended complaint named 46 defendants. I screened the amended complaint as required by 28 U.S.C.§ 1915A and ordered service of portions of the amended complaint on defendants Fisher, Reams, Mulligan, Karl, and Kot, and recommended that the balance of the amended complaint be dismissed for failure to state a claim. ECF no. 17. The surviving claims were that defendant Kot had violated the Eighth Amendment by assaulting

plaintiff on February 3, 2007, and that the other defendants had violated the First Amendment by removing plaintiff from his prison job (defendants Fisher, Reams, and Mulligan in February 2007) and removing or preventing plaintiff from getting another prison job (defendant Karl in October 2008) in retaliation for filing a complaint (Pearson v. Shawley, Civil Action No. 858-2006) in the Court of Common Pleas of Somerset County, and filing Grievance No. 177456 within the Pennsylvania Department of Corrections administrative remedy system. Amended Complaint, ¶1.

Plaintiff sought and was granted extension of time to file objections to my recommendation that portions of his amended complaint be dismissed but did not file timely objections. After a second motion for extension of time to file objections was denied, ECF no. 23, plaintiff filed untimely objections anyway. ECF no. 24. Plaintiff provided directions for service on the five defendants that I had ordered served, directions that were incorrect. See ECF no. 30. Plaintiff eventually provided a correct set of directions for defendants Reams, Mulligan, Karl, and Kot. Those defendants were served, appeared by counsel, and moved to dismiss the complaint for failure to state a claim and as barred by the statute of limitations. ECF no. 46. Plaintiff did not file a timely response, and I denied a motion for extension of time that

was filed after the due date for a response. I recommended that the motion to dismiss be granted because the claims alleged over events in February 2007 were untimely and the October 2008 retaliation claim failed to allege any plausible causal connection between the protected activity alleged and the adverse action alleged. ECF no. 50. Plaintiff did not file timely objections, although he did file untimely objections with a motion to consider them filed *nunc pro tunc*, after the amended complaint was dismissed. ECF no. 52, ECF no. 53.

The court adopted both of my recommendations and dismissed the amended complaint both as to the defendants I had recommended be dismissed after screening and as to the served defendants who had moved to dismiss. ECF no. 51. Plaintiff filed a motion to reconsider, ECF no. 55, which was referred to me and which I recommended be denied. ECF no. 57. Plaintiff filed a notice of appeal before that recommendation was considered, but did not file timely objections to the recommendation itself. The court disposed of the motion to reconsider, ECF no. 61, and the matter proceeded on appeal. Plaintiff then filed untimely objections to the Report and Recommendation. ECF no. 62.

In an opinion by Judge Sloviter, a panel of the Court of Appeals decided as a matter of first impression that the time spent

by an inmate exhausting administrative remedies tolled Pennsylvania's applicable statute of limitations period, <u>Pearson v. Secretary Department of Corrections</u>, 775 F.3d 598 (3d Cir.2015), and that plaintiff had alleged adequately that his alleged discharge from a job in October 2008 was caused by retaliation for filing grievances.

The use of force claim and two retaliation claims were returned for further proceedings and the four defendants who had been served filed an Answer. ECF no. 82. The plaintiff filed an "Objection" to the Answer, ECF no. 84, disagreeing with the footnote in the Answer that assumed that defendant Fisher had been dismissed from the case. The background to that dispute is as follows: before the case ever proceeded to the Court of Appeals I had notified plaintiff that his service instructions for defendant Fisher were incorrect and had directed him to supply correct ones. ECF no. 44. Plaintiff did not respond to this order before the complaint was dismissed. On remand, plaintiff sought an order directing the Marshal to locate and serve defendant Fisher. ECF no. 85. I denied this motion at ECF no. 87 for the reasons stated therein, and in June 2016 issued a pretrial order setting discovery deadlines. ECF no. 90. In the pretrial order I formally recommended that Fisher be dismissed as a defendant for failure to prosecute

unless plaintiff provided directions for service. No objections have ever been filed to that recommendation.

In August 2016 I noticed that despite the activity in the matter the case was not appearing on my CM/ECF reports because the case had not formally been reopened. I had previously noted that although the appellate filing fee had been paid in part not a penny of the filing fee for the complaint had been paid to this court, and therefore in my pretrial order I had ordered plaintiff to provide an updated inmate account statement. Plaintiff did not respond at all to that order. I asked the Clerk to reopen the case and filed an Report and Recommendation recommending that the matter be dismissed for failure to prosecute unless plaintiff sent an updated inmate account statement. ECF no. 93. Plaintiff did file timely objections to this recommendation, claiming that I was "harassing" him, ECF no. 94, but he did eventually provide the inmate account statement. ECF no. 96.

I had thought that perhaps the failure to receive any payment of the filing fee was because my order had not followed plaintiff as he was transferred between prisons, and so I re-sent my standard withdrawal order to plaintiff's current prison, see ECF no. 95. But the inmate account statement shows that plaintiff has regular deposits to his account and that filing fees for other

civil cases are being withdrawn from that account. Why no payments have ever been made by plaintiff on this case remains unexplained.

The following month the remaining defendants filed their motion for summary judgment, ECF no. 97, with a brief in support ECF no. 98, a statement of material facts, ECF no. 99, and an appendix, ECF no. 100. Plaintiff has filed no response.

Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir.1984), sets forth factors the court must consider in dismissing a case as a sanction for failure to prosecute: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) any history of delay; (4) whether the conduct of the party or attorney at fault was willful or in bad faith; (5) the effectiveness of alternative sanctions; and (6) the meritoriousness of the claim or defense. Plaintiff is *pro se* and bears all the responsibility for his failure to respond as directed in the pretrial scheduling order. The prejudice to the defendants that were served is that they have been put to the time and expense of preparing a dispositive motion. There is already a pending recommendation that the complaint be dismissed against defendant Fisher that plaintiff has never objected to. The prejudice to Fisher from any attempt by plaintiff to bring him into this

litigation ten years after the events that allegedly occurred is obvious.

There is a history of delay by plaintiff, either from repeated requests for extension of time, or from outright disregard of orders until plaintiff is confronted with the prospect of dismissal for failure to prosecute. I have no idea whether plaintiff's current lack of response is willful or negligent disregard of the pretrial scheduling order, but his disregard of orders is certainly a regular occurrence.

As for the merits of the claims, my discussion of the record may be taken both as an assessment of the sixth Poulis factor and as an independent recommendation under the standards for evaluating motions for summary judgment.

After Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003)(listing the elements for a retaliation claim) and Rauser v. Horn, 241 F.3d 330, 334 (3d Cir.2001)(same), to prevail on a retaliation claim a plaintiff must show (at the summary judgment stage show that there is a genuine issue of fact) that he was engaged in protected activity (such as filing grievances), that he suffered adverse action sufficient to deter a reasonable person from persisting in that protected conduct, and that the defendant took the adverse action as a result of the protected activity.

Focusing on the third element, causation, Judge Sloviter and the other two members of the panel, accepted plaintiff's conclusory allegation that Hunter had "admitted" the third element of the retaliation claim. Although neither plaintiff nor the panel specified whose liability Hunter allegedly admitted, the defendant who allegedly retaliated against plaintiff in October 2008 was defendant Karl..

It is now the summary judgment stage and plaintiff must go beyond allegations to evidence. The only assertion of a causal link between any protected activity by plaintiff and any adverse action by anyone is plaintiff's characterization of Unit Manager David Hunter's response in October 2008 to plaintiff's grievance as an admission of someone else's liability for retaliation. Hunter could not "admit" anyone's liability but his own, and the record before this court does not support a claim that Hunter admitted anyone's liability for anything. In response to a grievance (Grievance No. 247676) plaintiff filed after he failed to get a job as a "unit tutor," the matter was assigned by Heidi Sroka, the grievance coordinator at Somerset, to Hunter for an investigation. In the portion of the grievance form that asked plaintiff what actions he had taken before filing the grievance, plaintiff wrote:

The plaintiff wrote to the Civil Rights Division of the FBI, the Civil Service Commission, Crime Watch, the O.P.R. and Commissioner Jeffrey Beard about these retaliatory actions of the defendants. IF THE PLAINTIFF IS FURTHER RETALIATED AGAINST BY THESE DEFENDANTS OR THIS STAFF THE PLAINTIFF WILL BE AMENDING THE §1983 CIVIL ACTION THAT WAS ALREADY FILED TO INCLUDE THEM BUT IS ALREADY GOING TO BE AMENDED TO INCLUDE THIS INCIDENT.

I've filed grievances about this incident of retaliation before but nothing was done.

In Hunter's response he related that he spoke with the staff who were mentioned in the grievance and he wrote a paragraph in his response that stated:

It appears obvious by the grievances admitted to and the perceived current poor relationship the grievant has with unit staff, it would be self-defeating to hire the grievant as a unit worker. The grievant would be at odds with staff and this would result in instant problems. Time is a good healer, if the grievant would allow things to cool down perhaps a different outlook or sentiment would prevail.

Hunter also admonished plaintiff that he should use the grievance system to attempt to solve grievances and not to make threats of litigation. In his appeal to the next level of review of the grievance plaintiff, in addition to telling Hunter not to tell him what to put in his grievances, claimed that Hunter's paragraph quoted above "admits that it is because of the grievances ... that the plaintiff is not being given a job ... when he stated in his response [then follows the quote from Hunter]." Plaintiff has stuck with this characterization of Hunter as admitting the liability of unnamed defendants throughout, see Amended Complaint ¶67 (alleging

9

that Hunter "admitted to the retaliation by the defendants.") The plaintiff's characterization of a statement by a defendant does not trump the statement itself. And even assuming that it could ever be construed as an admission against interest by Hunter, it does not create a genuine issue of fact as to the liability of any defendants, defendant Karl included, because they are not the declarant.

Plaintiff's claim of retaliation in October 2008 was found to squeak by a Rule 12(b)(6) motion because even though nearly a year elapsed from what Judge Sloviter called the "last instance of antagonism" to the alleged retaliation, <u>see</u> 775 F.3d at 604, it was "especially" significant that Pearson's former unit manager, Hunter, "admitted that Pearson's termination was retaliatory." <u>See</u> 775 F.3d at 604. Plaintiff's *ipse dixit* that was acceptable to Judge Sloviter at the motion to dismiss stage is not evidence that any such admission exists. Because there is no evidence of causation, summary judgment must be entered for defendant Karl, who is the defendant relevant to this retaliation claim. Plaintiff claimed at his deposition that there must have been retaliation by Karl because plaintiff had filed grievances against Karl. That is not evidence.

As I have said before, the filing of grievances itself does not create a genuine issue of fact that those grievances caused anything. Inmates file grievances, some more than others, and plaintiff proclaims from his complaint to his deposition testimony that he is especially litigious, but there is no evidence that Karl, any other defendant, or any nondefendant ever suffered as a result of any grievance filed by plaintiff or by anyone else. At the summary judgment stage the plaintiff cannot simply rely on the conclusory allegation accepted at the earlier stage of this litigation to prove causation, he must come forward with some evidence that a defendant would at least have some reason to retaliate against him. There is nothing in the record.

Turning back to the earlier retaliation claim against Mulligan and Reams, plaintiff offers no evidence of causation at all as to the alleged retaliation in February 2007, and it is plaintiff's burden to show the existence of some genuine dispute of material fact that would allow a properly instructed jury to find for the plaintiff. It must be stressed that plaintiff's burden is to show a causal connection between protected activity and an adverse action, not merely that the alleged retaliation followed an "instance of antagonism." It must be further stressed that there is a key difference between showing a causal connection between the

alleged retaliatory act and the act of filing complaints or grievances, and showing a causal connection between the alleged retaliatory act and the content or frequency of grievances. The latter is quite often not sufficient to prove a claim of retaliation because an inmate may properly be disciplined for the content or frequency of complaints or grievances. An illustration of this is <u>Glenn v. DelBalso</u>, 559 Fed.Appx. 457 (3d Cir.2015), on remand 2016 WL 930722 at *10 (M.D.Pa. Mar. 11, 2016). Inmate Glenn filed numerous grievances about his belief that he was being shortchanged in the portion sizes of his meals and that other inmates were getting larger portions. After several grievances were rejected as frivolous, prison grievance coordinator McMillan placed Glenn into "grievance restriction" status, that limited the number of grievances he could file. Glenn sued, claiming that this was retaliation for protected activity.

Not so, said a panel of the Court of Appeals. The panel vacated and remanded Judge Kane's initial dismissal of the complaint to permit Glenn to file an amended complaint to clarify whether his allegations suggested that "DelBalso was acting in a retaliatory manner, **rather than appropriately sanctioning him** for filing frivolous grievances." 599 Fed.Appx. at 458. On remand, Judge Kane reviewed the record and found:

12

Reviewing the allegations in the complaint and the exhibits attached thereto in the light most favorable to Glenn, no person could reasonably conclude that DelBalso had a retaliatory animus entitling Glenn to relief under the First Amendment. It is clear from the exhibits that the grievance restriction was imposed because Glenn filed 5 frivolous grievances within a 30-day period.

2016 WL 930722, at *10.

Similarly, although conducting litigation in federal court is protected activity, Fed.R.Civ.P. 11, Fed.R.Civ.P. 37, 28 U.S.C.§ 1915(e)(2)(B)(i) and other provisions of law permit or require a court to dismiss litigation entirely, on motion or *sua sponte*, when it is frivolous, or is being conducted improperly even when it is not frivolous. Defendants who file or judges who grant Rule 11 or Rule 37 motions are not "retaliating" for the protected conduct of engaging in litigation, they are responding to the improper and therefore unprotected content of pleadings or other litigation conduct. See Kersey v. Becton Dickinson & Co., 433 Fed.Appx. 105, 111 (3d Cir.2011)(sanctions under Rule 11); In re Bishop, 559 Fed.Appx. 175, 176 (3d Cir.2014)(threatening sanctions for filing future frivolous pleadings).

It is clear that plaintiff engaged in protected activity, the filing of numerous grievances and lawsuits, before, during and after his removal from his kitchen assignment. As for the second element, it is the law of the case that plaintiff's allegation that

he was removed from a prison work assignment is sufficient allegation of adverse action. That does not mean that at the summary judgment stage there is evidence that in fact the loss of this particular prison job by plaintiff in February 2007 either deterred him or would deter any reasonable person from filing either a colorable civil complaint or a nonfrivolous grievance. But I do not discuss the sufficiency of the evidence of adverse action because defendants do not raise it in their motion.

Summary judgment should be entered for defendants on the February 2007 retaliation claim because no reasonable finder of fact could on this record find that the plaintiff's filing of Pearson v. Shawley or Grievance No. 177456 caused any action by any defendant, much less his removal from the kitchen.

Plaintiff's specific claim was that defendants Mulligan and Ream fired plaintiff from his post in the kitchen for filing a grievance against Kot. At his deposition plaintiff recalled that about three weeks after the alleged assault and the filing of the grievance (which specifically requested that plaintiff be removed from the kitchen and given another job at the same rate of pay) plaintiff was interviewed by Security Captain Leo Glass for his version of events. About three weeks after that, plaintiff testified (his chronology differs from that in his grievance), he

was told by the deputy manager of the kitchen, Lepley, that he should return to his unit. He was notified that he was "staffed out" a couple of days later by the Unit Manager, defendant Mulligan, with defendants Fisher and Ream present.

When asked why he thought the removal from the kitchen job was retaliation, plaintiff stated in his deposition:

Because one, when you're - if this happened and it's not - it's not able to be proven, they would have staffed me out from the beginning or laid me in after I filed a grievance on this, up until the time of the - that the investigation was over. Then after Captain Glass talked to me, told me at that time that he was staffing me out, removed me from the kitchen because of that. And you can't punish a prisoner for exercising the grievance process. If that was the case, then everybody that filed a grievance would be removed from their job because of it or some other stuff.

As can be seen, in addition to responding that to plaintiff his removal was equally retaliatory whether plaintiff was removed before or after the completion of any investigation, plaintiff testified that it was Glass who admitted that he - Glass - was staffing plaintiff out. A couple of pages later when pressed for clarification as to why defendants Mulligan or Reams were liable, plaintiff replied that Mulligan was liable "Because he was the unit manager. He was the one that held that, and had the bottom -the bottom line decision on that." As for Reams, he was liable "[b]ecause he was - him and Paul Fisher was the two who made a decision to staff me out of the kitchen for it." Plaintiff stated

is not retaliation. Plaintiff's belief that in fact he was in the right does not create an issue of fact as to the defendants' motives or intent, any more than an inmate's belief that he is innocent of a misconduct permits him to sue for retaliation after being found guilty of a misconduct.

Plaintiff in rapid succession testified under oath that Glass admitted to plaintiff that he - Glass - was the decision maker, but also that Mulligan is liable solely because of his job duties, and that Reams is liable because by some unknown means plaintiff two pages later now knew that it was Reams and not Glass who made the decision to remove him.

When pressed for clarification as to how any of this tied into either the filing of <u>Pearson v. Shawley</u> or Grievance No. 177456, plaintiff explained that in 2006 he had sued Shawley for giving him misconducts and "they knew what it was going to lead to from me alleging any assault on me by Don Kot." Plaintiff's explanation of his belief that there was a connection between his removal and his filing of Grievance No. 177456 was that "Well, it's been done in the past previous to other prisoners that have filed grievances on the kitchen." When asked for an example, plaintiff could not give any, much less show some similarity that would make an instance relevant to his circumstances.

that the reason given by an undifferentiated "they" was that "They said it couldn't be proved [sic: the original draft of the deposition stated "approved" but plaintiff corrected this in the errata sheet] that [sic: the original draft stated "because" but plaintiff corrected this in the errata sheet] I was assaulted by the staff there."

In other words, to the extent that plaintiff offered evidence, it was a statement by an unidentified someone that plaintiff was removed from the kitchen not because of his grievance but because after investigation there was no proof that his claim of an assault by Kot was true. That version of plaintiff's story is consistent with Glass's February 16, 2007 investigation report, in which Glass recommended that plaintiff be removed from the kitchen because Glass's investigation indicated to him that plaintiff was attempting to manipulate inmates in the kitchen to support the fabrication of an accusation against Kot, to obtain a transfer without loss of income, and to demonstrate that his legal abilities put him "in charge of others.".

Removing someone for making false accusations of misconduct or attempting to manipulate inmates, or to protect Simms, Mayfield and Franklin from retaliation by plaintiff because they did not wholeheartedly support plaintiff's version of events,

The "say anything" approach to litigation is on full display here: this is a naked claim not only of traveling retaliation but eternally evergreen retaliation: someone, whether that someone was Glass, Reams, or Mulligan, removed plaintiff from his job to retaliate for something protected, from a complaint filed two years previously to a recently filed grievance to a complaint that plaintiff might decide to file more than two years later. Plaintiff's deposition testimony shows that plaintiff believes two things that have no legal foundation: first, that there is no differentiation between filing grievances and complaints and the contents of those grievances and complaints, and no matter what he says in his grievances or complaints it is equally protected activity; second, that as long as plaintiff has filed one grievance or complaint within approximately a year from some institutional action he does not like, no more evidence is needed to show that adverse action is caused by his protected activity.

Plaintiff's incorrect beliefs about the law of retaliation do not create evidence that would permit a juror to validly find that a defendant retaliated against plaintiff for some protected activity. Even a jury that disbelieved Glass's account would have no evidence on which to base a finding that defendant

Mulligan or defendant Reams was the decisionmaker, much less a finding that the decision was retaliatory.

Turning to the assault claim itself, the claim by plaintiff is that defendant Kot violated the Eighth Amendment by allegedly assaulting plaintiff on February 3, 2007. Plaintiff at his deposition explained the encounter as Kot walking up to him and without explanation or words of any kind punching him three times on his upper arm or shoulder. The punches made his arm "sore" for an undefined period of time but not to the point that plaintiff sought any medical care or ever noticed a bruise.

The Eighth Amendment prohibits cruel and unusual punishment. It is not a tort statute. As Judge Friendly observed decades ago, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). The Supreme Court to some extent adopted Judge Friendly's aphorism as a constitutional principle in Hudson v. McMillian, 503 U.S. 1 (1992). Hudson v. McMillian held that malicious use of force which causes minor injury is actionable as a violation of the Eighth Amendment but implied that de minimis uses of force, even unnecessary ones, are not actionable. Although no significant injury is required in

19

an excessive use of force claim, the core inquiry is whether the force used was "malicious or sadistic." See Wilkins v. Gaddy, 559 U.S. 34 (2010); Hope v. Pelzer, 536 U.S. 730 (2002); Hudson v. McMillian, supra; Smith v. Mensinger, 293 F.3d 641 (3d Cir.2002). The extent of injury suffered is one factor that objectively indicates how much force was applied, and that objective evidence may suggest whether the use of force could plausibly be regarded as either unnecessary or excessive. Wilkins v. Gaddy, 559 U.S. at 37-38. The Court of Appeals has held, in the course of affirming summary judgment granted in favor of a corrections officer who, a jury could have found, gratuitously punched a handcuffed prisoner:

There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically.

Reyes v. Chinnici, 54 Fed.Appx. 44, 48 (3d Cir.2002). The evidence here, construed in the light most favorable to the plaintiff, could convince a reasonable juror that there was an unconsented touching but could not convince any reasonable juror that defendant Kot violated the Eighth Amendment. Plaintiff himself does not describe anything that would permit characterization of Kot's action as malicious or sadistic. And not that a jury would be required to believe the defendant's denial of any contact or any other

exculpatory evidence, but it is worth pointing out that there is other evidence from inmates identified by plaintiff to Glass as witnesses, and that evidence if believed also negates any Eighth Amendment claim. An inmate named David Simms was questioned about the incident and gave an affidavit. In the course of supporting plaintiff's allegation that Kot did strike plaintiff, Simms explained it as "...Kot has a habit of punching on inmates playing but not every inmate likes to be punched on even playing... ." Another inmate named Freddie Franklin gave an affidavit denying that he had seen any argument or contact between Kot and plaintiff, but that he did hear plaintiff claim "...that he was going to file a grievance because he is the grievance bandit." A third inmate named Mayfield only claimed only to have heard Pearson state "we don't do that."

There is no issue of fact that would permit a reasonable juror to find in plaintiff's favor. Summary judgment should be entered in favor of defendants for two independent reasons: plaintiff has despite notice completely failed to respond to the summary judgment motion, and there is no genuine issue of material fact that would allow a plaintiff's verdict on any one of plaintiff's three claims.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to file written objections to this Report and Recommendation.

DATE: _31 August 2017_                    _____
                                          Keith A. Pesto,
                                          United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

     Antonio Pearson BL-0521
     S.C.I. Greene
     175 Progress Drive
     Waynesburg, PA 15370